**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

JASON L. FALLS,            )
                                    )
           **Petitioner,**      )
                                    )
        **vs.**                 )       **Case No. CIV-09-1133-D**
                                    )
GREGG WILLIAMS,       )
                                    )
           **Respondent.**      )

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254, seeking habeas relief from a state court conviction. United States District Judge Timothy D. DeGiusti referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A response to the petition has been filed, to which Petitioner has replied. Thus, the matter is at issue. For the following reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges his conviction following a jury trial on one count of first degree murder for which he was sentenced to life in prison. Case No. CF-2005-2340, District Court of Oklahoma County; Petition, p. 1; Response, 1. On direct appeal, the Oklahoma Court of Criminal Appeals affirmed Petitioner's conviction and sentence. Case No. F-2006-913; Response, Ex. 4. On April 27, 2009, Petitioner filed an application for state post conviction relief, and this application was denied on June 3, 2009. Response, Exs. 5, 6. Petitioner appealed this denial on July 10, 2009, and the Oklahoma Court of Criminal Appeals declined jurisdiction and dismissed the attempted appeal as untimely. Case No. PC-

2009-627, Oklahoma Court of Criminal Appeals (Sept. 25, 2009); Response, Exs. 7, 8.[1]

Petitioner raises ten grounds for relief. In Ground One, he alleges that the jury was improperly instructed. Petition, 3. In Ground Two, he challenges the sufficiency of the evidence to prove the essential elements of the crime of first degree murder. Petition, 3. In Ground Three, Petitioner alleges that trial errors and prosecutorial misconduct cumulatively denied his right of due process. Petition, 3. In Ground Four, Petitioner alleges that the State failed to provide the state trial court with surveillance video from a convenience store from where Petitioner allegedly departed the scene. Petition, 4. In Ground Five, Petitioner alleges that there was a "conflict of testimony" as to whether Petitioner got into the back seat or the front passenger seat of the car in which he allegedly left the scene. Petition, 4. In Ground Six, Petitioner alleges "contradictory testimony" as to whether the person who drove Petitioner's car – which was in a nearby convenience store parking lot – walked to that car or was driven there by another. Petition, 4. He also claims that there is contradictory testimony as to whether a woman got into Petitioner's waiting car, or whether she was already seated inside. Petition, 4. In Ground Seven, Petitioner alleges that the presiding judge had a conflict because he had previously represented Petitioner's wife in a separate legal matter, and that the judge and Petitioner engaged in a "heated argument" after which

_____

[1]Petitioner alleges that he filed a second application for state post-conviction relief, and that the result is "Judgement (sic) Pending." Petition, 2. However, neither the docket sheet in Petitioner's criminal case nor any of the materials submitted by Petitioner or Respondent show any second application was filed. Petitioner indicates that he did not appeal his second application for post-conviction relief because "Mr. Falls does not trust Oklahoma's lower courts commitment to up holding its own state laws." Petition, 2.

the judge withdrew from his representation. Petition, 4. In Ground Eight, Petitioner alleges that his trial counsel had a conflict of interest because she represented both Petitioner and the witnesses against him at the trial. Petition, 4. In Ground Nine, Petitioner alleges ineffective assistance of appellate counsel for failing to raise all of the valid reasons for relief on direct appeal. Petition, 4. In Ground Ten, Petitioner alleges that the state district court erred in denying his application for post-conviction relief. Petition, 4-5.

## I. BACKGROUND[2]

On April 15, 2005, Cory Gage was shot and killed at the Ambassador Courts Apartments in Oklahoma City. Mr. Gage was not a resident of the apartments, but was a member of the Southeast Village Crips who dealt drugs at that location. Two days before the murder, Mr. Gage and Petitioner were involved in a fist fight at the Ambassador Courts, and by all accounts, Mr. Gage prevailed in that fight. On the day of the murder, Petitioner's cousin "Cooya" and Mr. Gage were involved in a verbal altercation that lasted several minutes. After the argument, Mr. Gage walked away to the rear of the apartments, and immediately thereafter several gunshots were heard. Three associates of Mr. Gage, "CJ," "Raw" and "Bishop" were in the area and heard the shots. CJ ran to the place from which the gunshots had come, and found Mr. Gage laying on his stomach on the ground. He turned Mr. Gage over and laid him partially on his lap. At this same time Raw ran by Bishop and indicated that Petitioner had shot Mr. Gage, and so Bishop went to the scene and saw CJ

---

[2]This general background is taken from the statement of facts in Petitioner's brief in chief on direct appeal. Response, Ex. 1, p. 1-8.

holding Mr. Gage. Mr. Gage was trying to speak but only gurgling could be heard. Mr. Gage died at the scene. The medical examiner later confirmed that Mr. Gage had been shot three times, and that a penetrating gunshot wound to his chest was the cause of death.

## II. STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

If a state court resolves issues in a summary disposition with little or no legal

reasoning, a federal habeas court still owes deference to the result. <u>Paine v. Massie</u>, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." <u>Id.</u> (quoting <u>Aycox v. Lytle</u>, 196 F.3d 1174, 1178 (10th Cir. 1999)).

## III. DISCUSSION

### A. IMPROPER JURY INSTRUCTIONS

In Ground One, Petitioner claims that his right to a fundamentally fair trial was violated by the trial court giving a jury instruction on flight. He also claims that the trial court erred in failing to give jury instructions on exculpatory statements and eyewitness identification. Petition, 3.

Respondent counters that the decision to give a particular jury instruction is generally a state law question unless the ailing instruction so infected the trial that the resulting conviction violates due process. Response, 4-5. In other words, unless the jury instruction errors resulted in a fundamentally unfair trial they do not merit relief in a federal habeas action. Response, 5.

On direct appeal, the Oklahoma Court of Criminal Appeals stated the following with regard to this issue:

> [W]e find the trial court did not abuse its discretion in giving the flight instruction. Defense counsel's attempts on cross-examination to controvert the issue of flight and offer explanations for [Petitioner's] departure was sufficient to support giving the instruction.

[W]e find the trial court did not abuse its discretion in denying defense counsel's requested jury instructions regarding eyewitness identification and the exculpatory statement doctrine....  A review of the evidence shows no "serious questions exist concerning the reliability of [the] identification" of [Petitioner].  Several eyewitnesses positively identified [Petitioner], they had an opportunity to view [Petitioner] clearly the day of the murder, their testimony remained positive and unqualified after cross-examination; and prior descriptions of [Petitioner] by the witnesses was highly accurate.  None of the witnesses had failed to previously identify [Petitioner].  Therefore, a cautionary instruction on eyewitness identification was not warranted.

Further, this Court has not found an abuse of discretion in a trial court's refusal to give the exculpatory statement instruction when statements by the defendant are disproved by other evidence.  Here, trial testimony disproved [Petitioner's] statement that he was packing for his trip to Chicago instead of being at the murder scene.  Further, [Petitioner] was not prejudiced by the absence of the instruction as the jury was fully instructed on the State's burden of proof, the presumption of innocence, impeachment, and how to assess the credibility of each witness.

Response, Ex. 4, p. 2-3 (citations omitted).

A petitioner seeking collaterally to attack a state court conviction based on an erroneous set of jury instructions "bears a heavy burden of proof."  Shafer v. Stratton, 906 F.2d 506, 508 (10th Cir. 1990).  "Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense," Shafer, 906 F.2d at 508 (quotation omitted), or "so infected the entire trial that the resulting conviction violates due process," Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  Moreover, the burden on a petitioner attacking a state court judgment based on a *failure* to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less

likely to be prejudicial than a misstatement of the law.'" Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir. 1999) (quoting Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995)) (additional citations omitted). There is no Supreme Court law establishing a constitutional violation on the facts at hand; thus, the Oklahoma Court of Criminal Appeals cannot be said to have unreasonably applied federal law in upholding the conviction despite the trial court's decision to give a flight instruction or its decision not to give a cautionary eyewitness identification or exculpatory statement instruction, nor can Petitioner demonstrate any fundamental unfairness as a result. Accordingly, it is recommended that relief be denied on Ground One.

## B.  SUFFICIENCY OF THE EVIDENCE

Petitioner contends that the evidence was insufficient to support his conviction for first degree murder. On direct appeal, he alleged that the evidence at trial merely raised a suspicion of guilt and was therefore insufficient to convict him. Petitioner claimed there was no evidence that he killed the victim or that the victim was killed with the requisite malice aforethought, since there was no evidence that he planned to kill the victim, had any intention of killing the victim, or formed such intention prior to the victim's death. Response, Ex. 1, p. 17-19.

Respondent outlines the evidence relating to these elements, and notes that sufficiency of that evidence must be determined by viewing the evidence in the light most favorable to the prosecution. Response, 18. Viewing the evidence in this light, Respondent argues that any rational jury could have found the essential elements of first degree murder beyond a

reasonable doubt.  Id.

In considering this claim on direct appeal, the Oklahoma Court of Criminal Appeals

stated:

> [W]e find the evidence was sufficient to prove beyond a reasonable doubt
> [Petitioner] committed first degree murder.  Although there was conflicting
> evidence, reconciliation of those conflicts and credibility choices regarding
> witnesses testimony was for the jury.  On appellate review this Court accepts
> all reasonable inferences which tend to support the jury's verdict.  The
> evidence clearly supports the jury's verdict.

Response, Ex. 4, p. 3 (citations omitted).

The Supreme Court set forth the standard of review for insufficiency of the evidence

claims in Jackson v. Virginia, 443 U.S. 307 (1979).  In that case, the Court held that the

relevant question in considering such a claim, "is whether, after viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt."  Id. at 319; see also Romero v.

Tansy, 46 F.3d 1024, 1032 (10th Cir. 1995).  This standard gives the trier of fact full

responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  Thus,

in applying this standard, this Circuit has held that the Court may not weigh conflicting

evidence or consider the credibility of witnesses.  Grubbs v. Hannigan, 982 F.2d 1483, 1487

(10th Cir. 1993).  Rather, the Court must "accept the jury's resolution of the evidence as long

as it is within the bounds of reason."  Id.

Further, the standard of review for insufficiency of the evidence claims must be

applied with explicit reference to the substantive elements of the criminal offense as defined by state law. <u>Jackson</u>, 443 U.S. at 324, n. 16. Okla. Stat. tit. 21 § 701.7(A) provides: "A person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." Thus, the elements of first-degree malice murder are: (1) the unlawful, (2) death of a human, (3) caused by the defendant, (4) with malice aforethought. OUJI-CR 4-61 (Second).

After viewing the evidence in the light most favorable to the prosecution, the undersigned finds that any rational trier of fact could have found all of the essential elements of the crime of murder in the first degree beyond a reasonable doubt. Sergeant Parks of the Oklahoma City Housing Authority testified that someone flagged him down on the day of the murder stating that there was possible gun play on "the Hill" – an area of the Ambassador Courts Apartments. Trial Tr. Vol. I, 24-28. When Sgt. Parks approached the area he saw the victim lying on his back with several people standing around him. <u>Id.</u> at 31. All departed but two, and someone then approached the two and asked what was going on; one of them replied "Cuz, Baldie just shot Double Lot." <u>Id.</u> at 31-33. Petitioner was also known by the name Bald Head. <u>Id.</u> at 86. Witness Dennis Ray Wren, a resident at the Ambassador Courts, testified that he bought drugs from Petitioner or "Bald Head," and that Petitioner and the victim, Mr. Gage, sold drugs in two separate areas of the Ambassador Courts. <u>Id.</u> at Vol. II, 191, 192-93. Wren witnessed a fist fight between Petitioner and the victim two days

before the murder.  Id. at 199-201.  On the day of the murder, Wren saw Petitioner's cousin, "Cooya," arguing with the victim.  Trial Tr. Vol. I, 206, 321.  Wren went down a few doors to an apartment where his nephew lived, but he could still hear the argument.  Id. at 208-10. Since he was not a resident of the apartments, the victim often spent time at Wren's apartment, and Wren ran errands for him.  Trial Tr. Vol. II, 186.  When the argument began to wind down, Wren saw the victim walk towards the back of the apartments, so Wren left his nephew's to give the victim a key to his apartment.  Trial Tr. Vol. II, 212-214.  At this same time, he saw Petitioner with a gun, moving in and out of the area behind the apartments using a "stalking" or "stealth" motion.  Id. at 215-17.  He was carrying the gun against his leg.  Id. at 217.  He knew it was Petitioner from his braids.  Id. at 219.  Wren then saw Petitioner's hands go up and he heard several gunshots.  Id.  at 220-221.  After hearing the shots, Wren turned to go back inside the apartment; at that time someone ran in from the front and said "they shot Double O."  Trial Tr. Vol. II, p. 221.  Double O" was the victim's street name.  Id. at 189.  At the moment of the shooting, Wren could not see the victim and Petitioner's back was to Wren.  Id. at 222-23.  Wren recognized the shooter as the same person who had argued with the victim two days previously.  Id. at 225.  Wren also later identified Petitioner as the shooter from a photo lineup.  Id. at 225.

Witness Jonathon Brown, a/k/a "CJ" testified that there was bad blood between Petitioner and the victim over drug territory at the Ambassador Courts.  Trial Tr. Vol. II, 302, 306-09.  He also witnessed the fist fight two days earlier, and believed that the victim had won the fight.  Id. at 312-13.  He heard the argument between Cooya and the victim on the

day of the murder, and the argument was about the fight Petitioner had with the victim two days before. Id. at 322. The argument between Cooya and the victim broke up when another man known as "Bishop" informed the two that a housing authority enforcement officer was approaching. Id. at 322. As the victim walked away toward the back of the apartments, CJ heard several gunshots in rapid succession. Id. at 326. CJ ran to the victim, and as he did, he saw Petitioner run past. Id. at 328. Petitioner was carrying a "baby Nine" in his hand. Id. at 329. He saw Petitioner run out a side gate. Id. at 330. When CJ found the victim, he was laying on his chest; CJ turned him over and he was still breathing but not talking. Id. at 332-33. After the victim took his last breath, CJ closed his eyes and walked off. Id. at 333.

Witness Ralph Ammons a/k/a "Bishop" also saw the victim and Cooya arguing on the day of the murder. Trial Tr. Vol. II, 376, 383. Four or five seconds after the argument ended, and the victim had walked off, Bishop heard five to six gunshots in rapid succession. Tr. 395-96. As Bishop came out of the door of the apartment he was in, he saw another man known as "Raw" run by and he asked him what had happened. Raw responded "Bald Head just shot Double O." Id. at 397. Bishop then went to the victim and saw CJ holding him in his lap. Id. at 398.

Rodney Horton, a/k/a "Raw," a cousin of the victim, also saw the argument between Cooya and the victim. Trial Tr. Vol. II, 318; Vol. III, 429, 433-35. At some point the victim became tired of arguing, and told Raw and CJ to come on as he walked towards the back of the apartments. Trial Tr. Vol. III, 444. Raw went to the fence to see if the police were there, and the victim continued to walk to the back; Raw then heard gunshots. Trial Tr. Vol. III,

444. Raw then went to a gate in an effort to get out of the area when he saw Petitioner run by him, coming from the direction where the victim had last been seen. Id. at 450-51. Raw saw something silver in Petitioner's hand which he thought was a gun. Id. at 452. After Raw and CJ ran to the victim, Raw went back to the gate and saw Petitioner running across the street. Trial Tr. Vol. III, 455-57. He told him to stop but he kept running. Id. at 457. Raw saw Petitioner's face, and there was no doubt in his mind that it was "Bald Head." Id. at 512-13.

Witnesses Angelo and Nakeshia Lomo testified that on the day of the murder someone tried to get into the back door of Nakeshia's apartment at the Ambassador Courts. Trial Tr. Vol. III, 527-531, 569. Nakeshia recognized the man as the same man who had fought with the victim two days previously. Id. at 570-72, 575. She also picked Petitioner out of a photo lineup as the one who tried to enter her apartment shortly before the shooting. Id. at 573-74. Shortly after the man tried to get into Nakeshia's apartment, Angelo and Nakeshia heard several gunshots close to the back of their apartment. Id. at 531, 577-78.

Witness Joseph Bevel heard gunshots and when he ran up to investigate he saw Bald Head walking at a fast pace towards a car. Trial Tr. Vol. IV, 625-28. The car was parked at the nearby 7-11 convenience store. Id. at 629. The car was a bigger, four-door, silver car. Id. at 629-30. Bevel saw Petitioner get in the passenger side front door of the car. Id. at 630. There may have been another person in the car besides Petitioner and the driver; once Petitioner got in, the car took off. Id. at 630.

Witness Bobby Cox testified that on the day of the murder Cooya asked him for a ride

12

to the Ambassador Courts.  Trial Tr. Vol. IV, 657-59.  After he dropped Cooya off, he heard him start arguing with Mr. Gage.  Id. at 660, 662-63.  Cooya had two guns in his waistband. Id. at 668-69.  Shortly thereafter Cox heard gunshots and he started running back towards the car in which he and Cooya had arrived.  Trial Tr. Vol. IV, 669-73.  Cooya also got in the car and took Cox around the corner.  Id. at 674.  He took Cox to the next parking lot over and told him to get in Petitioner's car – a big silver car.  Id. at 677-78.  The keys were already in the car, and Cox drove it to the nearby 7-11.  Id. at 679-80.  After Cox parked the car at the 7-11, Petitioner and his girlfriend got in and Petitioner told Cox to take him home.  Id. at 682. On the drive, Petitioner stated that "he might have got him," or "I got him.  I have no remorse."  Id. at 685.  Cox believed that Petitioner meant he had shot or beat up the victim. Id. at 686.  After dropping Petitioner off, Cooya called Cox and told him to take the car back to the Ambassador Courts.  Id. at 690.  Four days after the murder a silver four-door Oldsmobile was found at a "gang house."  Trial Tr. Vol. I, 89.  Petitioner's name was on a paper tag found with the car.  Id. at 98.

Viewing this evidence in the light most favorable to the prosecution, the undersigned finds that any rational trier of fact could have found the essential elements of the crime of first degree murder beyond a reasonable doubt. See Jackson  443 U.S. at 319.  Accordingly, the decision of the Oklahoma Court of Criminal Appeals was neither contrary to nor an unreasonable application of federal law, and relief should be denied on Ground Two.

### C.  GROUNDS THREE, FOUR AND TEN

As noted above, in these three grounds Petitioner argues that "trial errors and

prosecutorial misconduct" deprived him of a fair trial, that the prosecution failed to provide the court with a surveillance video from the 7-11, and that the state district court erred in denying his application for post-conviction relief.

Respondent contends that these claims have never been raised before this proceeding, and are therefore unexhausted. Response, 21-22. He further argues that any attempt to exhaust the claims at this point would be futile because the state courts would find them procedurally barred under Okla. Stat. tit. 22 § 1086. Response, 22. Accordingly, he argues that these three grounds are subject to an anticipatory procedural bar. Id.

Section 2254(b)(1) generally requires a state prisoner to exhaust state court remedies prior to commencing a federal habeas action. Bland v. Sirmons, 459 F.3d 999, 1011 (10th Cir. 2006), cert. denied 550 U.S. 912 (2007). A claim is exhausted if it has been "fairly presented" to a state's highest court. Id. (citing Picard v. Connor, 404 U.S. 270, 275 (1971)). "'Fair presentation' requires more than presenting 'all the facts necessary to support the federal claim' to the state court or articulating a 'somewhat similar state-law claim.'" Id. (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam)). "Fair presentation" occurs when the petitioner raises the "substance" of the federal claim in state court. Demarest v. Price, 130 F.3d 922, 932 (10th Cir. 1997). "Fair presentation" does not require the petitioner to "cite book and verse on the federal constitution," Bland, 459 F.3d at 1011 (quoting Picard, 404 U.S. at 278), but the state court must be alerted that the petitioner is asserting federal constitutional claims and the petition's allegations and supporting evidence must offer the state court "'a fair opportunity' to apply controlling legal principles to the facts bearing upon

his constitutional claim." <u>Demarest</u>, 130 F.3d at 932 (quoting <u>Harless</u>, 459 U.S. at 6).

The undersigned has thoroughly reviewed the claims presented in the petition, on direct appeal, and in Petitioner's application for post-conviction relief, and concludes that Grounds Four and Ten are indeed unexhausted.

As the petition contains both exhausted and unexhausted claims, it is a "mixed" petition. <u>Pliler v. Ford</u>, 542 U.S. 225, 227 (2004) (quotation omitted). When a district court is presented with a mixed petition, it generally "may either (1) dismiss the entire petition without prejudice in order to permit exhaustion of state remedies, or (2) deny the entire petition on the merits." <u>Moore v. Schoeman</u>, 288 F.3d 1231, 1235 (10th Cir. 2002) (discussing options in light of § 2254(b) and <u>Rose v. Lundy</u>, 455 U.S. 509 (1982)). However, if it is beyond dispute that an unexhausted claim would be procedurally barred according to state law if the petitioner returned to state court to exhaust the claim, the claim is subject to the application of an anticipatory procedural bar. <u>Cummings v. Sirmons</u>, 506 F.3d 1211, 1223 (10th Cir. 2007) (applying <u>Anderson v. Sirmons</u>, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007)).

Were Petitioner to return to state court to exhaust his claims, the Oklahoma Court of Criminal Appeals undoubtedly would apply its waiver bar embodied in Okla. Stat. tit. 22, § 1086 to Petitioner's subsequent application for post-conviction relief. In Oklahoma, "postconviction relief is reserved only for the rare set of circumstances where a particular claim 'could not have been raised on direct appeal.'" <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1349 n. 4 (10th Cir. 1994); <u>see</u> Okla. Stat. tit. 22, § 1086. Moreover, the application of the

waiver procedural bar found in § 1086 is both an independent and adequate state procedural ground. Thus, Petitioner's unexhausted claims in Grounds Four and Ten are subject to an anticipatory procedural bar that is independent and adequate. Therefore, these claims should be considered procedurally defaulted.

A claim that is procedurally barred because it was defaulted in state court or because an anticipatory procedural bar has been applied, may not be considered for federal habeas review unless the petitioner demonstrates cause for the default and actual prejudice, or shows that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998). As cause, Petitioner suggests that he attempted to present these claims to the Oklahoma courts but was hindered by lack of access to the law library and the legal incompetence of the law librarian. Petitioner's Reply, 9-10. He also claims he can make a "colorful showing" of actual innocence through the surveillance video from the 7-11 and "alibi witnesses." Id. at 9. However, the administrative grievance materials attached to his reply pertain to the time after which his post-conviction application was denied, and so do not show how these difficulties prevented him from raising these claims initially in his application for post-conviction relief. At most, these difficulties may pertain to the lateness of his appeal from the denial of post-conviction relief – an application that did not raise the two claims which are unexhausted. Even liberally construing Petitioner's argument to be that difficulties with law library access or ignorance of legal requirements prevented the initial presentation of these claims, such is not cause that would excuse his procedural default. A

petitioner's pro se status and lack of knowledge about the law generally do not demonstrate cause for excusing procedural default. Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995) (petitioner's assertion that he was not an attorney and was unaware of existence of state statute was insufficient, as a matter of law, to establish cause). See, e.g., Nigro v. Sullivan, 40 F.3d 990, 997 (9th Cir. 1994) (inmate's conclusory claims that denial of access to law library and to administrative forms caused default were insufficient to show "cause and prejudice"); O'Donnell v. Davis, No. 03-3449, 115 Fed. Appx. 869, 871-72 (7th Cir. Sept. 30, 2004) (prison lock-down restricting access to legal materials did not "cause" procedural default where inmate was aware of grounds for appeal of disciplinary conviction).[3] Because Petitioner does not demonstrate "cause," the Court need not decide whether he has shown "prejudice." Steele v. Young, 11 F.3d 1518, 1522 n. 7 (10th Cir. 1993).

Finally, the undersigned finds that failure to consider these claims will not result in a fundamental miscarriage of justice. The fundamental miscarriage of justice exception is "an extremely narrow exception, implicated only in 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Ballinger v. Kerby, 3 F.3d 1371, 1375 (10th Cir. 1993) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). "To prevail, [Petitioner] must identify evidence that affirmatively demonstrates his innocence." Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999). Petitioner's claim that

---

[3]This and any other unpublished disposition are cited pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

he can make a colorable showing of actual innocence is conclusory and unsupported by any evidence. To come within the narrow exception for a fundamental miscarriage of justice, Petitioner must provide evidence that does more than simply "undermine the finding of guilt against" him or her. Ballinger, 3 F.3d at 1375. Petitioner has neither presented nor explained how the 7-11 surveillance tapes or these unidentified "alibi" witnesses would provide evidence of his actual innocence of the murder offense. Accordingly, the undersigned agrees with Respondent that Grounds Four and Ten are subject to anticipatory procedural default and are not cognizable in this action.

The undersigned also notes that aside from the procedural bar issue, Ground Ten fails to state a claim for federal habeas relief as there is no constitutional provision requiring a state to provide post-conviction review. Pennsylvania v. Finley, 481 U.S. 551, 557 (1987). Therefore, because this claim focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim. Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998).

However, the undersigned finds that Petitioner raised the claims contained in Ground Three in his direct appeal. In Petitioner's brief in chief on direct appeal, he argued that the cumulative effect of trial errors[4] together with two comments made by the prosecutor during closing arguments served to deny him due process. Response, Ex. 1, p. 20.

In considering this issue on direct appeal, the Oklahoma Court of Criminal Appeals

---

[4]Petitioner does not specifically reference these "trial errors," but they are presumably the instructional errors argued earlier in the direct appeal brief.

stated:

> We have reviewed the challenged prosecutorial comments for plain error and find none. The comments were reasonable inferences on the evidence. Finding no errors warranting reversal or modification, either singly or cumulatively, we also deny the request for relief based upon cumulative error.

Response, Ex. 4, p. 3-4.

The undersigned finds this decision to be neither contrary to nor an unreasonable application of federal law. In his brief in chief on appeal, Petitioner references two statements made by the prosecutor. Response, Ex. 1, p. 22-23. First, he contends that the prosecutor impermissibly shifted the burden of proof when he asked the jury "Does any piece of evidence point to some other person other than Jason Falls?" Id. at 22.[5] Second, he claims that the prosecutor argued facts not in evidence when he argued that Petitioner was angry after losing the fist fight with the victim. Id. at 23.

Ordinarily, "[h]abeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974)). However, "[w]here prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence or privilege against self-incrimination, a habeas petitioner need not establish that the entire trial was rendered

---

[5]On direct appeal, Petitioner also noted that the prosecutor told the jury that Petitioner had the same subpoena power as the State, but he failed to produce any witnesses to testify as to his alibi. Response, Ex. 1, p. 22. Petitioner does not seem to complain of this statement however, as he noted that it might be permissible for the State to comment on his failure to prove an alibi defense. Id.

unfair, but rather that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." Torres v. Mullin, 317 F.3d 1145, 1158 (10th Cir. 2003); Hamilton v. Mullin, 436 F. 3d 1181, 1187 (10th Cir. 2006). This determination is made "only after considering all of the surrounding circumstances, including the strength of the state's case." Malicoat v. Mullin, 426 F.3d 1241, 1255 (10th Cir. 2005). Here, in light of the proceedings as a whole, the undersigned finds that the prosecutor's remark regarding the lack of evidence pointing to anyone else was not of such a character that the jury would naturally and necessarily shift the burden of proof to Petitioner. Cf. Compare Delgado v. Barreras, No. 97-2007, 1997 WL 785525 at *2 (10th Cir. Dec. 22, 1997) (no prosecutorial misconduct where prosecutor's remarks were not a direct statement on the presumption of innocence and remarks were in response to defense counsel's comments during closing argument).

It was also not unreasonable for the Oklahoma Court of Criminal Appeals to find the second statement to be a reasonable inference from the evidence. Witness Wren testified that Petitioner and the victim both sold drugs at separate areas of the apartments. Trial Tr. Vol. II, 192-93. When he witnessed the argument two days before, the victim was on top of Petitioner. Id. at 201. Witness Brown testified that he heard the victim tell Petitioner to "move around," and thought the fight was over drug territory. Id. at 306-07, 311, 313. He also testified that the victim won this fight with Petitioner. Id. at 312. Witness Ammons testified that from what he had heard from four or five different people, the victim "got the best of" Petitioner. Id. at 381. Witness Horton testified that Petitioner's cousin argued with the victim on the day of the murder, referencing the previous fight as unfair. Trial Tr. Vol.

III, 434-35.  He also testified that the word around the complex was that the victim had won the earlier fight.  Id. at 511.  Witness Cox testified that he was aware of recent problems between Petitioner and the victim.  Id. at Vol. IV, 688-89.  Even one of Petitioner's witnesses testified that the victim won the fight with Petitioner a few days before the victim was killed. Trial Tr. Vol. V, 893.  To the extent there was any misconduct, it was not so egregious as to render the entire trial fundamentally unfair.

Likewise, the Oklahoma Court of Criminal Appeals' decision that there was no error to cumulate was not unreasonable.  "Cumulative error analysis is an extension of harmless error and conducts the same inquiry as for individual error, focusing on the underlying fairness of the trial."  Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003) (citations and internal quotations omitted).  The cumulative effect of individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.  Duckett v. Mullin, 306 F.3d 982, 992 (10th Cir. 2002).  Here, the undersigned finds that Petitioner has failed to establish any error, harmless or otherwise; therefore, there is no basis upon which to find cumulative error.  See, e.g., Gonzales v. Tafoya, 515 F.3d 1097, 1126 (10th Cir. 2008) (denying petitioner's claim that he was prejudiced by the cumulative effect of his counsel's errors where court concluded counsel's performance was not constitutionally deficient and, therefore, there was no error to cumulate), cert. denied 129 S. Ct. 211 (2008); United States v. Caballero, 277 F.3d 1235, 1250 (10th Cir. 2002 ) ("Cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.")

Therefore, although the undersigned finds that Ground Three is not subject to procedural bar, it is nonetheless without merit and it is therefore recommended that relief on this ground be denied.

### D.  GROUNDS FIVE, SIX, SEVEN, EIGHT, AND NINE.

Petitioner raised these five claims in his application for state post-conviction relief. However, he failed to timely appeal from the state district court's denial of his application. <u>See</u> Response, Exs. 5 and 8.  Thus, Respondent claims that the grounds are procedurally barred from federal review.  Response, 29.

As discussed above, the doctrine of procedural default prevents a federal court from considering issues on habeas review that have been defaulted in the state courts on an independent and adequate state procedural ground, unless the petitioner can show cause for the default and prejudice attributable thereto or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 749-50 ( 1991). Petitioner failed to timely appeal the district court order denying post-conviction relief within the time period established by Rule 5.2(C) of the Rules of the Oklahoma Court of Criminal Appeals.  Under Oklahoma law, an appeal from a state district court order denying post-conviction relief must be filed within thirty days of the denial. Okla. Stat. tit. 22, Ch. 18, App., Rule 5.2(C).  Thus, unless an appeal out of time is granted pursuant to the procedure outlined in Okla. Stat. tit. 22, Ch. 18, App., Rule 2.1(E), a petitioner is not relieved of the effect of his failure to timely appeal, and the failure constitutes a procedural bar under state law.  <u>Id.</u> at Rule 5.2(C)(5).

The Tenth Circuit has found that Rule 5.2(C) provides an adequate and independent state procedural rule barring federal habeas relief. <u>Johnson v. Champion</u>, 288 F.3d 1215, 1227 n.3 (10th Cir. 2002) (the declination of jurisdiction based on Rule 5.2(C)(2) constitutes an independent and adequate state procedural ground).

The fact that three of Petitioner's claims involve ineffective assistance of counsel does not change the analysis. The Tenth Circuit has found that such claims are not subject to a procedural bar, in certain circumstances, when the basis for the state procedural default is Okla. Stat. tit. 22, § 1086.[6] <u>See, e.g.</u>, <u>Breechen v. Reynolds</u>, 41 F.3d 1343, 1363-64 (10th Cir. 1994) (habeas petitioner not procedurally barred from claiming ineffective assistance of counsel, even though state appellate court found the claim waived for failure to present it on direct appeal); <u>English v. Cody</u>, 146 F.3d 1257, 1262-63 (10th Cir. 1998) (same, except claims can be barred in limited cases meeting certain conditions). Here, however, the Oklahoma Court of Criminal Appeals did not reject Petitioner's ineffective assistance claims on the ground that Petitioner should have raised them on direct appeal. Rather, the Court declined to hear the merits of Petitioner's claims because he failed to either timely appeal or show that his failure to timely appeal was through no fault of his own  Response, Ex. 8.

---

[6] Okla. Stat. tit. 22, § 1086 provides:

> All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the prior application.

These requirements did not prevent Petitioner from vindicating his constitutional right to effective assistance of counsel or deprive him of an adequate opportunity for such vindication. Therefore, any finding as to the adequacy of § 1086, the state procedural rule barring claims not raised on direct appeal, is not determinative here. Laws v. Fatkin, No. 02-6000, 44 Fed. Appx. 366, 367 (10th Cir. Aug. 9, 2002) (claims of ineffective assistance of trial and appellate counsel raised in post-conviction application were procedurally defaulted pursuant to Rule 5.2(C)(2) because appeal of denial of post-conviction relief was untimely); Martin v. Gibson, No. 01-6211, 28 Fed. Appx. 866, 868 (10th Cir. Nov. 29, 2001) (claims that petitioner received ineffective assistance of trial and appellate counsel were defaulted in state court on an independent and adequate state ground -- failure to comply with Rules 5.2(C) and 10.1(C)(2)).

Federal habeas review of Petitioner's claims, therefore, is barred unless he can establish cause and prejudice or a fundamental miscarriage of justice. To show cause, Petitioner must establish an external impediment preventing compliance with the procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). As noted above, Petitioner has failed to support his claim that an external impediment prevented his timely appeal. Because Petitioner cannot show cause for his procedural default, there is no need to consider the prejudice element. Steele v. Young, 11 F.3d 1518, 1522 n. 7 (10th Cir. 1993). For the reasons explained above, Petitioner has not shown that failure to consider these claims would result in a fundamental miscarriage of justice. Here, Petitioner has identified no evidence showing his actual innocence of the charges against him. He mentions the surveillance video

from the 7-11, but fails to show how any such tape would demonstrate his actual innocence. He generally refers to alibi witnesses, but provides absolutely no detail or evidentiary support for this conclusory argument. Therefore, Grounds Five, Six, Seven, Eight, and Nine are procedurally barred from federal habeas corpus review.

## **RECOMMENDATION**

Based on the foregoing findings, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court on or before September 29, 2010, in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P. 72. Petitioner is further advised that failure to file a timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 9th day of September, 2010.**


_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE